**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**SAN ANGELO DIVISION**

| | | |
|---|---|---|
| **BARBARA WILMON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 6:05-CV-0003-C** |
| | § | **ECF** |
| | § | **Referred to the U.S. Magistrate Judge** |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the court upon Plaintiff's complaint filed January 11, 2005, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security income benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of her complaint on April 29, 2005, Defendant filed her brief on May 23, 2005, and Plaintiff filed her reply on June 13, 2005.  The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

## I.   STATEMENT OF THE CASE

Plaintiff filed applications for a period of disability and disability insurance benefits and for supplemental security income benefits on August 28, 2002, alleging disability beginning September 28, 2000.  Tr. 83-85, 285-87.  Plaintiff's applications were denied initially and upon reconsideration.  Tr. 34-40, 43-46, 289-95, 297-99.  Plaintiff filed a Request for Hearing by Administrative Law Judge on May 22, 2003, and this matter came for hearing before the Administrative Law Judge ("ALJ") on May 13, 2004. Tr. 23, 47-48, 308-334. Plaintiff, represented by a non-attorney, testified in her own behalf.  Tr. 310-30.  Michael Driscoll, a vocational expert ("VE"), appeared and testified as well.  Tr. 330-32.  At the hearing, Plaintiff requested that her alleged onset date be amended to January 1, 2002.  Tr. 23.  The ALJ issued a decision unfavorable to Plaintiff on May 26, 2004.  Tr. 20-29.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act.   He found that Plaintiff met the nondisability insured status requirements through the date of his decision and that Plaintiff had not engaged in substantial gainful activity at any time since January 1, 2002, her amended alleged date. Tr. 24, 28.  He found that Plaintiff has "severe" impairments, including asthma, degenerative joint disease, diabetic neuropathy, and chest pain.   *Id*.   He further found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  Tr. 25, 28. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work ("PRW") or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p.  Tr. 25.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible.  Tr. 26, 28.

The ALJ found that Plaintiff retained the RFC to perform, on a sustained basis, the requirements of sedentary work activity, limited to jobs that allow frequent opportunities to sit or stand, while in the performance of job duties, and that do not involve excessive dust, fumes, or other irritants. Tr. 27-28.  The ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of working with the above-cited limitations.  *Id*.  The ALJ relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work as an office manager/dispatcher.  *Id*.  The ALJ, therefore, concluded that Plaintiff could return to her PRW as an office manager/dispatcher and thus was not disabled within the meaning of the Social Security Act at any time through the date of his decision.  Tr. 28.

Plaintiff submitted a Request for Review of Hearing Decision/Order on August 9, 2004.  Tr. 9-17.  The Appeals Council issued its opinion on October 1, 2004, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request.  Tr. 4-8.  The ALJ's decision, therefore, became the final decision of the Commissioner.

On January 11, 2005, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.    STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the

Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case, the ALJ found at step 4 that Plaintiff was not disabled because she was able to return to her PRW. Tr. 28.

## III.   DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence and that the ALJ failed to consider the evidence of pain, failed to follow the treating doctor rule, failed to follow the Medical Vocational Guidelines and Listing Regulations, and failed to consider Plaintiff's combination of impairments.

A.     **Whether the ALJ's determination of Plaintiff's RFC is supported by substantial evidence and whether the ALJ erred by failing to find that Plaintiff met or equaled in severity one or more of the Listings.**

Plaintiff first argues that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence. She claims specifically that the ALJ failed to fully evaluate the medical evidence. She also claims that the objective evidence shows that she is disabled because she meets or equals in severity one or more of the Listings under 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The Commissioner responds that the ALJ reviewed "all of the evidence in the record," gave "careful consideration of the entire record," and considered "all symptoms, including pain." Tr. 23, 25, 28. She also contends that Plaintiff did not meet or equal any Listing.

The court is required to review the evidence to determine whether substantial evidence supports the ALJ's RFC determination. *See Waters,* 276 F.3d at 718. As argued by the Commissioner, the ALJ stated that he fully reviewed and considered the entire record and considered all of Plaintiff's symptoms, including pain.

The ALJ considered Plaintiff's motor vehicle accident in January 2002. At Brownwood Regional Medical Center, Plaintiff reported cervical pain. X-rays revealed muscle spasm and cervical spondylosis. Other records from the Medical Center at various times indicated an abnormal gallbladder ejection fraction on February 10, 2003, and other test results were considered normal or within limits. Tr. 175-85.

The ALJ reported that Plaintiff was seen in June 2002 by her treating physician, Dr. Nigalye, for asthma attacks lasting approximately four days. Nigalye submitted a letter indicating that Plaintiff could not mop, dust, clean, or do anything involving contact with any chemicals because it was thought to be triggering her asthma. Tr. 25.

The ALJ reported that Plaintiff was seen in December 2002 for a consultive examination for disability. She reported to the examiner that she was diagnosed with asthma when she was 35. Her

medications keep her asthma under control most of the time.  She was diagnosed with sleep apnea in 2000.  She is 5'4" and weighs 206 pounds.  Her joints hurt, especially her right hip and both knees, as well as her left shoulder and both hands.  She was diagnosed with arthritis 10 to 15 years ago.  She occasionally has chest pain.  She works part-time, but her duties are limited.  Examination indicated that she had full extension of her shoulders, elbow, wrist, and digits.  She had full range of motion of both hips with decreased pain of the right knee.  However, there was no effusion.  She limps a little with her right leg.  X-rays revealed degenerative disease of the right knee.  A pulmonary function study showed a low lung capacity, but it would not preclude her from all work activity.  Tr. 25-26.

The ALJ reported that Plaintiff was seen by her doctor in March 2003 for shoulder pain  with swelling.  Plaintiff was prescribed anti-inflammatories.  In September 2003 she was seen for coughing, sneezing, congestion, runny nose, headaches, back spasms, and back and hip pain.  An electromyogram report in November 2003 revealed slight paraspinal initiation with paraspinal muscles as well as increased insertional activity suggestive of an L5 lesion.  Peripheral neuropathy was considered.  Plaintiff was given a lumbar epidural corticosteroid injection.  Tr. 26.

The ALJ reported that Plaintiff testified at the hearing that she cannot sit for long periods of time and cannot, therefore, work at her past job as a dispatcher.  She cannot stand or walk for long.  Her back hurts, and she can hardly breathe.  She has asthma.  Her legs hurt and she does not have a right kneecap.  She lives with her mother and does not do much housework.  She has to take a break while doing housework.  She tries to vacuum some.  She goes grocery shopping.  She uses the electric cart.  She seldom drives.  She lies down or props up during the day to watch television.  She has read three books in the last year.  She walks in the yard some.  She watches news and western movies.  She receives prednisone injections for asthma.  She gets dizzy for 5 minutes at a time, two or three times a day.  She is fatigued and has sleep apnea.  She takes a one hour nap in the afternoon.

Her legs and toes are numb.  She needs help lifting above the head.  She feels like a knife is in her back all day and night.  She has spinal stenosis.  She has cluster migraine headaches once or twice a month.  Tr.26.

The ALJ found that Plaintiff's testimony was not totally credible in light of the evidence. The medical records show that Plaintiff has not reported chest pain since 2000; that Plaintiff has been diagnosed with asthma, but she testified that her medications keep it under control and no medical reports suggest otherwise; and the medical records in 2004 mention sore throat, ear pain, joint tenderness, and benign essential hypertension.  In March 2003 her treating physician, Dr. Nigalye, completed a physical RFC evaluation.  He opined that Plaintiff had persistent back pain, degenerative joint disease, muscle spasms, hypertension, and obstructive sleep apnea.  He opined that maximum recovery had taken place.  He stated that Plaintiff had dizziness, fatigue, and a decreased range of motion of the lower back.  He opined that Plaintiff's emotional factors contributed to her symptoms and functional limitations and that Plaintiff would have frequent problems with attention and concentration.  The ALJ observed, however, that there were no medical records referring to any attention or concentration problems, and, although Plaintiff has a mild osteophyte problem, she complains that there is a knife in her back.  He concluded that her doctor's evaluation is probably based on Plaintiff's self report.  The ALJ notes that there has been virtually no mention of Plaintiff's sleep apnea and that none of the medical records fully support the Plaintiff's allegations of pain, limitations, and symptoms.  Therefore, the ALJ gave Dr. Nigalye's assessment very little weight.  Tr. 26.

The ALJ recognized that Plaintiff may experience mild to moderate pain and diminishing physical ability, but he also noted that even mild to moderate levels of pain and physical limitations are not incompatible with performing certain levels of sustained work activity.  He did recognize

that Plaintiff has a diagnosis of asthma and degenerative joint disease and noted that restrictions would be considered in determining her RFC.  Tr. 26-27.

The state agency physicians opined that Plaintiff was able to perform light work activity. After considering their opinions, Plaintiff's testimony, the evidence of record, and the combined effects of all of Plaintiff's impairments, the ALJ found that Plaintiff retained the RFC to perform sedentary work, further limited to jobs allowing for frequent opportunities to sit or stand and jobs not involving excessive dust, fumes, or other lung irritants.

Considering all of the medical reports now in the record, the ALJ's statement that there is virtually no mention of Plaintiff's sleep apnea in the records is incorrect.  Sleep apnea appears in a number of medical reports which, in most cases, appear to be reported by the patient and not confirmed.  A sleep study was planned in March 2000, but the court finds no evidence that it was ever conducted.  Tr. 250.  In any event, the record does not show that Plaintiff's sleep apnea has significantly affected Plaintiff's functional capacity.

Plaintiff does not refer to other evidence in the record to support her general claim that the ALJ's RFC determination is not supported by substantial evidence.  The court has examined all of the medical records, which begin on March 13, 2000, and end in April 2004.

After reviewing all of the medical records, Plaintiff's testimony, the ALJ's credibility findings regarding Plaintiff's testimony, and the lack of support in the record for Dr. Nigalye's Physical Residual Functional Capacity Evaluation, this court cannot find that the ALJ's determination of Plaintiff's RFC is unsupported by substantial evidence.  A reasonable mind might accept the relevant evidence in the record as adequate to support the ALJ's RFC determination.  *See Masterson,* 309 F.3d at 272.  Neither Doctor Nigalye's own treatment notes nor any other medical evidence in the record supports Dr. Nigalye's evaluation.  Therefore, the ALJ's determination of Plaintiff's RFC must stand.

-8-

Plaintiff next argues that the objective evidence shows that the ALJ erred by not finding that Plaintiff meets or equals one or more of the Listings at the third step of the evaluation process and was, therefore, disabled.  She alleges that she meets or equals any one or more of Listings 1.02 (major dysfunction of a joint), 1.04C (lumbar spinal stenosis), 3.03 (asthma), 4.03 (hypertensive cardiovascular disease), and 9.08 (diabetes mellitus) and should have been found disabled at the third step.

The ALJ determines at step 3 of the 5-step sequential analysis whether a claimant's severe impairments meet or equal one or more of the Listings.  At step 3, the burden of proof rests with a claimant.  That burden is to provide and identify medical signs and laboratory findings that support *all* criteria for a step 3 impairment determination.  *McCuller v. Barnhart,* 72 Fed.Appx. 155, 158 (5th Cir. 2003); *Selders v. Sullivan,* 914 F.2d 614, 619 (5th Cir. 1990); 20 C.F.R. § 404.1526(a). If a claimant fails to provide and identify medical signs and laboratory findings that support all criteria of a Listing, the court must conclude that substantial evidence supports the ALJ's finding that the required impairments for any Listing are not present.  *Selders,* 914 F.2d at 620.

Plaintiff has failed to provide and identify medical signs and laboratory findings that support *all* of the criteria required for a Listing.  The requirements of Listing 1.02 include, at least, major dysfunction of a joint(s) characterized by gross anatomical deformity of a joint, with an inability to ambulate effectively or with the involvement of specified upper extremity joints resulting in the inability to perform fine and gross movements effectively.  Plaintiff has not demonstrated a gross anatomical deformity of a joint or either of the inability to ambulate effectively or the inability to perform fine and gross movements effectively due to the specified upper extremity joints.

The requirements of Listing 1.04C include, at least, spine disorders resulting in the compromise of a nerve root or the spinal cord with lumbar spinal stenosis and resulting in the

inability to ambulate effectively.  Plaintiff has not demonstrated that she has the inability to ambulate effectively or that she has the other impairments required under this Listing.

The requirements of Listing 3.03 include, at least, asthma with chronic asthmatic bronchitis and the FEV[1] shown under Listing 3.02A for her height or with attacks, in spite of prescribed treatment and requiring physician intervention, occurring at least once every two months or six times per year over an evaluation period of at least 12 consecutive months.  Plaintiff has not demonstrated that she meets the requirements of this Listing.

The requirements of Listing 4.03 include, at least, chronic heart failure or ischemic heart disease.  Plaintiff has not demonstrated that she meets the requirements of this Listing.

The requirements of Listing 9.08 include, at least, actually having diabetes mellitus with neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in gross and dexterous movements, or gait and station; or with acidosis occurring at least once every two months; or with rentinitis proliferans.  She has not demonstrated that she meets the requirements of this Listing.

Moreover, Plaintiff has not attempted to support any of her Listing claims by showing the particular requirements that she claims to have met for any of the five Listings included in her claim.  Further, she has not attempted to identify how any evidence in the record demonstrates that any particular requirement for a Listing has been met.  Instead, she recites numerous impressions and diagnoses found in the record without identifying how or where that evidence is to be applied to demonstrate that somewhat complicated criteria have been met.  After review of the evidence submitted, the court is unable to identify the existence of the pieces of evidence necessary to demonstrate that the requirements have been met for any of the five Listings under consideration.

For the reasons discussed, the court finds that Plaintiff did not meet her burden to provide and identify medical signs and laboratory findings that support *all* criteria for a Listing at step 3.

-10-

Therefore the court must conclude that substantial evidence supports the ALJ's finding that the required impairments for any Listing are not present.  Plaintiff's claim that the ALJ erred by finding that Plaintiff's impairments did not meet or equal in severity the requirements of any of the specified Listings is, therefore, without merit.

**B.    Whether the ALJ failed to consider the evidence of pain.**

Plaintiff claims that the ALJ failed to consider the evidence of Plaintiff's pain. She alleges that there is medical evidence that could reasonably be expected to produce the level of pain of which Plaintiff complained and that the ALJ did not evaluate, as required by Social Security Rule 96-7p, the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which those symptoms may limit her ability to work.

Defendant claims that the ALJ considered Plaintiff's pain and evaluated the medical evidence and testimony, which included Plaintiff's allegations of her pain and symptoms.

Social Security Rule 96-7p provides that the ALJ must determine whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce a claimant's pain.  Then, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which those symptoms may limit the claimant's ability to work.

Here, the ALJ specifically noted that in determining Plaintiff's RFC, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling 96-7p.  Tr. 25.  He reviewed Plaintiff's testimony and the medical evidence and found that Plaintiff's testimony was not totally credible. He recognized that Plaintiff may experience mild to moderate pain and a diminishment of physical ability but that even mild to moderate levels of pain and physical limitation are not incompatible

with the performance of certain levels of work activity.  Tr. 26-27.  He then considered these matters in determining the extent to which Plaintiff's pain and symptoms may limit Plaintiff's ability to work.  He expressly considered Plaintiff's testimony, the evidence of record, and the combined adverse effects of all of Plaintiff's impairments and concluded that Plaintiff retained the RFC to perform sedentary work, which involves lifting no more than 10 pounds at a time, with a certain amount of walking and standing necessary to perform job duties.  He further limited Plaintiff's RFC to jobs that allowed frequent opportunities to sit or stand, while in the performance of job duties, and to jobs that do not involve excessive dust, fumes, or other lung irritants.  Tr. 27.

The ALJ's assessment of Plaintiff's credibility is entitled to great deference.  *Newton,* 209 F.3d at 458.  As Defendant has noted, it is not mandatory that every complaint be accepted as accurate.  Otherwise, benefits would be available merely for the asking, a result plainly contrary to the determination process.  D. Brief 7.  Moreover, disabling pain must be constant, unremitting, wholly unresponsive to therapeutic treatment, and corroborated in part by objective medical testimony.  *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001).  It does not appear that Plaintiff has that level of pain.  She has only received conservative treatment for pain. She reported taking only Celebrex for her arthritic pain.  Tr. 133.  She has not had surgery or been hospitalized for severe pain since her amended onset date, January 1, 2002.  Tr. 23.  An MRI of her spine revealed only mild degenerative changes.  Tr. 276.  Sensory, motor, and reflex examinations were reported as normal.  Tr. 163-66, 260-61, 243-44.  The Fifth Circuit has acknowledged that mild or moderate pain will not render a claimant disabled.  *Newton,* 209 F.3d at 459.  Thus, the court finds that the ALJ appropriately considered Plaintiff's claims of pain and included limitations in Plaintiff's RFC consistent with his findings regarding Plaintiff's pain.  His decision is supported by substantial evidence.

C.    **Whether the ALJ erred because he failed to give sufficient weight to the opinions of Plaintiff's treating doctor regarding Plaintiff's RFC.**

Plaintiff claims that the ALJ erred by failing to follow the "treating doctor rule." Specifically, she alleges that the overwhelming objective evidence more than adequately supports Dr. Nigalye's determination of Plaintiff's RFC.

The Commissioner argues that the ALJ was justified in giving Dr. Nigalye's opinion of Plaintiff's RFC little weight because his opinion was not supported by the record.

The ALJ determined that Plaintiff retained the RFC to perform sedentary work, which involves lifting no more than 10 pounds at a time, with a certain amount of walking and standing necessary to perform job duties and further limited to jobs allowing for opportunities to sit or stand and to jobs that do not involve excessive dust, fumes, or other lung irritants.

The Social Security Administration ("SSA") has a number of rules and regulations that apply to treating physicians.  Here, Plaintiff claims specifically that the ALJ erred in giving Dr. Nigalye's RFC opinion little weight, because there was more than adequate support for Nigalye's opinion in the record, and the ALJ's RFC should, therefore, have included additional limitations.  P. Brief 11, 15.  Plaintiff does not, however, suggest what additional limitations are requested.

The regulations provide that the ALJ will consider opinions from medical sources on issues such as a claimant's RFC, but the final responsibility for deciding a claimant's RFC is reserved to the Commissioner.  20 C.F.R. § 404.1527(e)(2); *see* 20 C.F.R. §§ 404.1545, 404.1546.  The ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner."  20 C.F.R. § 404.1527(e)(3).  "The ALJ as factfinder has the sole responsibility for weighing the evidence and may chose whichever physician's diagnosis is most supported by the record."  *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)(citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).

The opinion of a treating physician, however, who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456. Moreover, a treating sources opinions may be assigned little or no weight when good cause is shown. *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994).

The task of weighing the evidence is the province of the ALJ. *Chambliss*, 269 F.3d at 523. The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse*, 925 F.2d at 790. He reviewed and carefully considered all of the evidence in the record and  all of Plaintiff's symptoms, including pain. He  discussed the evidence from examining and non-examining sources. He is not required, however, to specifically discuss all of the evidence that supports his decision or that was rejected. *Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994). In reviewing the evidence, he found that the Plaintiff was not totally credible. The medical records show that Plaintiff has not often reported chest pain. She has been diagnosed with asthma, but she testified that her medications keep her asthma under control. There was no medical evidence to the contrary. He considered the records of Plaintiff's primary treating physician and incorporated limitations into Plaintiff's RFC that restricted her to jobs that allow for frequent opportunities to sit

or stand and that do not involve excessive dust, fumes, or other lung irritants.  Tr. 27.  However, the ALJ concluded that much of Dr. Nigalye's RFC evaluation was inconsistent with other medical evidence in the record.  For example, Nigalye's evaluation stated that Plaintiff's emotional factors contributed to her symptoms and functional limitations, but emotional factors had never been mentioned in the medical records.  He reported that Plaintiff would have frequent problems with attention and concentration, but no records referred to any attention or concentration problems.  Plaintiff has a mild osteophyte problem, but she complains of a "knife in her back," and her doctor's evaluation is apparently based on Plaintiff's report.

This court has reviewed all of the medical records, and the ALJ's decision fairly incorporates the credible, relevant medical evidence.  The medical evidence is reasonably consistent throughout regarding Plaintiff's assessments and diagnoses, including Dr. Nigalye's records, except for Dr. Nigalye's answers on the Physical Residual Functional Capacity form for Plaintiff dated March 26, 2004.  The history and assessment notes, many of which were presumably based on Plaintiff's self reporting, usually included reports of noninsulin dependant diabetes mellitus, mild degenerative joint disease, mild osteophyte formation, muscle spasms, benign essential hypertension, asthma, back pains, and sleep apnea.  Otherwise, Plaintiff  had periods of time when she had earaches, coughs, sore throat, sneezing, runny nose, sinusitis, and headaches, and she reported occasional chest pain.  She had a vehicle accident and broke some ribs, which apparently healed.  She had reduced range of motion of her right knee.  She had nausea and chest pain with a gallbladder problem, which apparently was resolved.  An MRI  for her spine indicated diffuse bone demineralization, mild degenerative changes, slight multilevel disc desiccation, unremarkable distal spinal cord signal, mild multi-level degenerative osteophyte formation, and mild to moderate abnormalities in the disks imaged.  Other test results showed there was slight paraspinal initiation with paraspinal muscles and increased insertional activity in the muscles, suggestive of an L5 lesion.

Most recently, Dr. Green noted that his impressions were diabetic peripheral neuropathy/lumbar radiculopathy and gait was normal heel to toe. Plaintiff was treated with a variety of medications throughout and was given a variety of tests over time.

In addition to the ALJ's report regarding Dr. Nigalye's Physical Residual Functional Capacity form, the court notes these additional items. Nigalye answered that Plaintiff was limited to no overhead lifting. Reaching, fingering, and pushing/pulling were affected by Plaintiff's impairments. The severity of the impairment affected by reaching and fingering were marked as moderate, while the severity of the impairment affected by pushing/pulling was marked severe. The time that Plaintiff could stand/walk in an 8-hour workday was marked as ½ hour total and 15 minutes continuously. Sitting was noted to be affected by the impairments, which Dr. Nigalye indicated was 1/4 hour total during an 8-hour workday and 1/4 hour continuously. He reported that Plaintiff's lower back pain with muscle spasms supported her standing/walking and sitting assessments and stated that the MRI showed osteophyte. He reported that Plaintiff cannot do work even if she could alternate between sitting and standing. He reported that Plaintiff must use a cane for occasional standing/ walking and that Plaintiff cannot work an 8-hour day, even with the restrictions indicated. A cane had never been mentioned before. Asked to explain the degree and nature of the pain that Plaintiff could be reasonably expected to have because of her impairment and the effectiveness of medical treatment, Nigalye stated that the symptoms of persistent lower back pain with muscle spasms are subjective. However, he noted that the MRI does show osteophyte.

The evidence in Dr. Nigale's evaluation is contrary to any other evidence in the record, including his own treatment records. It is significantly different from the report of the medical consultant, Dr. S. Spoor. He noted the same general ailments noted throughout Plaintiff's records. He noted that his exam was unremarkable regarding Plaintiff's functional limitations. He noted the joint space in Plaintiff's right knee, with no other abnormality, and Plaintiff's x-ray was

unremarkable.  His assessment of Plaintiff's exertional limitations fell generally within the light level.

This court finds that substantial evidence supports the ALJ's determination that Dr. Nigalye's evaluation of Plaintiff's RFC was not well-supported by medically acceptable clinical and laboratory diagnostic techniques and was inconsistent with the other substantial evidence in the record. Therefore the ALJ, for good cause, appropriately discounted the weight of Nigalye's evaluation and gave his evaluation little weight.  Based on the other evidence in the record, the ALJ appropriately exercised his responsibility as the factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record.

Plaintiff raises for the first time in her Reply Brief that the ALJ erred in failing to consider each of the factors specified in 20 C.F.R. § 1527(d)(2) before determining that the opinion of a treating physician is not entitled to controlling weight or is entitled to little or no weight.  The ALJ's decision does not address this requirement.  To the extent that this court is required to address this point, raised for the first time in Plaintiff's Reply Brief, such error would warrant reversal and remand only if the Plaintiff affirmatively demonstrated prejudice or survived a harmless error review.

A harmless error analysis applies to administrative failure to comply with a regulation.  *See Frank v. Barnhart,* 326 F.3d 618 622 (5th Cir. 2003).  Violation of a social security ruling merits remand only when a claimant affirmatively demonstrates prejudice.  *Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir. 1981).  The two concepts are closely related.  Prejudice is established by showing that additional evidence could have been produced , and "that the additional evidence might have led to a different decision."  *Newton,* 209 F.3d at 458.  An error is harmless unless there is reason to think that a remand might lead to a different result.  *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989).  Plaintiff has failed to affirmatively demonstrate how the ALJ's appropriate review and

-17-

consideration of each of the six factors has prejudiced her or how a remand might lead to a different result.  Thus, the court must affirm on this issue.

**D.      Whether the ALJ failed to follow the Medical Vocational Guidelines and Listing Regulations.**

Plaintiff claims that the ALJ erred by not fully including all of Plaintiff's impairments and limitations in determining Plaintiff's RFC.  She further claims that the ALJ erred because he found that Plaintiff could do her PRW when, without such finding, the evidence would have required a determination of disability under the Guidelines.

Defendant argues that the ALJ correctly found at step 4 that Plaintiff could perform her PRW, and she was, therefore, not disabled.  Defendant further argues that the Guidelines are considered only when the ALJ reaches step 5 of the sequential evaluation process, and Plaintiff never reached step 5 because substantial evidence supports the ALJ's decision at step 4 that Plaintiff could perform her PRW, based on the testimony of a VE.

Under the 5-step sequential analysis for initial disability determinations, if a claimant is found not disabled at any step, the remaining steps are not considered.  20 C.F.R. § 404.1520.  Thus, Defendant is correct in arguing that step 5 was never reached in this case.  The remaining issue is whether substantial evidence supports the ALJ's determination that Plaintiff could perform her PRW, which terminated the analysis and determined that Plaintiff was not disabled.

Plaintiff claims that the ALJ did not fully include all of Plaintiff's impairments and limitations in determining Plaintiff's RFC.  The ALJ indicated in his decision that RFC is defined as the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks. 2 0 C.F.R. §§ 404.1545, 416.945, SSR 96-8p.  The ALJ indicated that in determining Plaintiff's RFC, he considered all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent

with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929, and Social Security Ruling 96-7p.  He further indicated that he considered all medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations.  20 C.F.R. §§ 404.1527, 416.927; SSR 96-2p, 96-6p.  The ALJ reviewed the medical evidence.  He reviewed Plaintiff's testimony and found that it was not totally credible in light of the evidence, as recited in section A above.  The ALJ found that none of the medical records fully support the Plaintiff's allegations of pain, limitations, and symptoms, and he gave Dr. Nigalye's RFC evaluation little weight.  The ALJ indicated that Plaintiff may experience mild to moderate pain and a diminishment of physical ability but noted that even mild to moderate levels of pain and physical limitations are not, in and of themselves, incompatible with the performance of some levels of sustained work.  His credibility finding notwithstanding, the ALJ recognized Plaintiff's diagnoses of asthma and degenerative joint disease and determined that additional restrictions would be necessary for those impairments along with the determination of Plaintiff's RFC.

The issue here is whether substantial evidence supports the ALJ's finding that Plaintiff could do her PRW.  The ALJ's review of the evidence and this court's review of the evidence, as described in other sections above, shows that the ALJ's finding that Plaintiff can perform her PRW is supported by substantial evidence.  Therefore, Plaintiff's claim on this point is without merit.

**E.    Whether the ALJ failed to consider the combination of impairments.**

Plaintiff claims that the ALJ erred by failing to consider the "combination of impairments." Specifically she claims that the ALJ erred by failing to address Plaintiff's ability to perform all of the strength demands of sedentary work pursuant to Social Security Rulings 96-8p and 96-9p in

determining Plaintiff's RFC.  She alleges that the ALJ should have considered each function separately and discussed the claimant's ability to perform sustained work activities.

Defendant alleges that the ALJ considered the combined effects of Plaintiff's impairments on her ability to perform work and considered all of the evidence of record, all symptoms, including pain, and the medical opinions in determining Plaintiff's RFC.  Defendant alleges that substantial evidence supports the ALJ's finding that Plaintiff was limited to less than the full range of sedentary work.

Social Security Ruling 96-8p provides that exertional capacity involves seven strength demands and that each function must be considered separately.  The ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis.  Social Security Ruling 96-9p provides that the RFC assessment is a function-by-function assessment.  The ALJ reported that he carefully considered the entire record.  He indicated that he considered all medically determinable impairments.  He indicated that Plaintiff claimed that she was impaired with asthma, degenerative joint disease, diabetic neuropathy, and chest pain and that he determined she had severe impairments pursuant to the regulations.  He indicated his consideration and awareness of the effects of physical and/or mental limitations that affect Plaintiff's ability to perform work-related tasks in determining her RFC pursuant to the regulations and SSR 96-8p.  He also considered all medical opinions which reflected judgments about the nature and severity of Plaintiff's limitations pursuant to the regulations, SSR 96-2p, and SSR 96-6p.  He considered Plaintiff's testimony regarding her claims about impairments and how they affected her functioning and limitations.  He considered Plaintiff's functioning abilities reflected in the evidence, including two RFC evaluations.  Based on his extensive review of the evidence, including the combined adverse effects of all of the impairments, he made his finding of Plaintiff's RFC, concluding that she retained the ability to perform sedentary work with additional limitations on a sustained basis.

The court finds that the ALJ considered the effect of Plaintiff's combined impairments, he sufficiently addressed her ability to perform all of the strength demands pursuant to Social Security Rulings 96-8p and 96-9p, and he sufficiently considered each function separately and discussed Plaintiff's ability to perform sustained work activities.  The court finds that Plaintiff's claim addressed under this section is without merit.

## IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 14th day of March, 2006.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**